ORIGINAL

16940-002-A331

PETER A. DAVIDSON, SBN 76194
REIN EVANS & SESTANOVICH LLP
1925 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CALIFORNIA 90067
Tel: 310\ 551-3100
Fax: 310\ 551-0238

Attorneys for James H. Donell,
Receiver

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JAMES H. DONELL, RECEIVER FOR
J.T. WALLENBROCK &
ASSOCIATES and CITADEL
CAPITAL MANAGEMENT GROUP,
INC,

        Plaintiff,

v.

ROBERT KOWELL,

        Defendant.

CASE NO.: CV04-9702

COMPLAINT TO AVOID FRAUDULENT
TRANSFERS AND RECOVER
PROPERTY TRANSFERRED

Plaintiff, James H. Donell, Receiver avers:

1.     James H. Donell ("Donell" or "Receiver") is the duly appointed and acting Receiver for J.T. Wallenbrock & Associates ("Wallenbrock") and Citadel Capital Management Group, Inc. ("Citadel") sometimes hereinafter collectively referred to as the "Receivership Entities".

2.     Donell was appointed receiver for the Receivership Entities on February 21, 2002 pursuant to an order of the United States District Court for the Central District of California in Case No. CV02-00808-ER <u>Securities & Exchange Commission v. J.T. Wallenbrock et al.</u> (hereinafter the "SEC Case").

DOCKETED ON CM
DEC - 6 2004
BY

1

COMPLAINT TO AVOID FRAUDULENT TRANSFERS



```
11/30/2004 1:17:25 PM  Receipt #: 18446
      Cashier : RDEJESUS [LA 2-2]
Paid by: J.T.WALLENBROCK
2:CV04-09702
2005-086900        5 - Filing Fee Civil(1)
Amount :                           $60.00
2:CV04-09702
2005-510000       11 - Special Fund F/F(1)
Amount :                           $90.00
Check Payment : 1338 /             150.00
Total Payment                      150.00
```

3. Pursuant to an order issued by the United States District Court in the SEC Case, the Receiver was specifically authorized to commence this lawsuit.

4. This Court has jurisdiction over the subject matter of this lawsuit because this lawsuit is ancillary to the SEC Case and the receivership now pending before the Court.

5. Venue lies in this district because this lawsuit is ancillary to the SEC Case and the receivership.

6. Wallenbrock is a general partnership located in Pasadena, California.

7. Wallenbrock issued promissory notes to individuals and entities (hereinafter "Noteholders") that purported to earn 20% interest every three months.

8. Defendant Robert Kowell (hereinafter "Kowell") was a Wallenbrock Noteholder.

9. Wallenbrock claimed that it engaged in the business of accounts receivable factoring for latex glove manufacturers located in Asia.

10. Larry Osaki ("Osaki"), a defendant in the SEC Case, is a resident of Upland, California, is the managing general partner of Wallenbrock, and an owner of Citadel.

11. According to the defendants in the SEC Case, Osaki is the controlling owner of Citadel.

12. Osaki signed, or caused to be signed, the promissory notes issued by Wallenbrock.

13. Osaki kept track of the receipt and use of Noteholder funds by use of journal entries.

14. Osaki was a joint account holder, with his wife, Mary E. Osaki, on the main depository bank account for Wallenbrock at Wells Fargo Bank where Noteholder funds were deposited.

15. Van Ichinotsubo ("Ichinotsubo"), a defendant in the SEC Case, is a resident of Cerritos, California, was an employee of both Wallenbrock and Citadel and

had an office at Citadel.

16. Ichinotsubo solicited Noteholders for Wallenbrock, and Noteholders dealt with Ichinotsubo in setting up and managing their promissory notes.

17. Citadel is a Nevada corporation and was controlled and owned in part by Osaki.

18. Citadel shared offices and employees with Wallenbrock.

19. Citadel claimed to be engaged in the investment banking business and securing financing for start up businesses.

20. Citadel's business was almost entirely funded with Wallenbrock Noteholders' money.

21. Wallenbrock paid Citadel's overhead and payroll.

22. Citadel used its facilities and employees to execute transactions in Wallenbrock notes, meet and communicate with Wallenbrock Noteholders and invest Wallenbrock funds in risky start up businesses.

23. Wallenbrock's investment note program, pursuant to which it issued promissory notes to Noteholders that purported to earn 20% interest every three months, was a Ponzi scheme.

24. Wallenbrock collected at least $230 million in Noteholder funds through the offer and sale of the three month promissory notes promising a 20% return (for each three month period).

25. Approximately 6,000 Noteholders participated in the Wallenbrock note program.

26. At the time of the Receiver's appointment, Wallenbrock owed at least $700 million to Noteholders.

27. Unless Noteholders otherwise elected, the Wallenbrock notes were automatically rolled over upon maturity into new three month notes, promising another 20% return.

28. Noteholders were neither required nor asked to provide any financial information about themselves to Wallenbrock; including net worth or salary information used to determine whether they were accredited investors.

29. Based on the attractive and reported consistent 20% return every three months, many Noteholders rolled over their notes, along with the purported interest earned at maturity.

30. Wallenbrock, Osaki and Ichinotsubo told Noteholders that they were collecting funds for Wallenbrock to engage in the business of factoring accounts receivable.

31. In oral communications and offering letters, Noteholders were told that Wallenbrock purchased accounts receivable from Malaysian manufacturers of latex gloves for 75 to 80 percent of balances due on the accounts receivable with the proceeds from the Noteholders' promissory notes. This statement was false.

32. In offering letters, Noteholders were told that Wallenbrock provided half of the funds and pooled them with Noteholder funds to purchase accounts receivable. This statement was false.

33. The Noteholders were told that when Wallenbrock collected accounts receivable at the end of the 90 days, the Noteholders and Wallenbrock each earned a 20% return. This statement was false.

34. Noteholders were told, and the notes also reflected, that Noteholders were granted a security interest in the accounts receivable of Wallenbrock. These statements were false.

35. The notes issued to the Noteholders stated that they were secured by an undivided interest, together with security interests granted to other Noteholders, in the underlying accounts receivable of Wallenbrock, pursuant to Article 9 of the California Uniform Commercial Code. These statements were false.

36. The Noteholders were told that the Wallenbrock promissory notes were secured by the underlying accounts receivable from hospitals and large American

companies in the food industry that purchased latex gloves, such as Anheuser Busch, Ocean Spray, Garden Restaurants and Coca-Cola. These statements were false.

37. Noteholders were told that Wallenbrock never lost any Noteholders' money.

38. Wallenbrock, Osaki and Ichinotsubo emphasized the safety of the 20% return to be paid to Noteholders.

39. Wallenbrock did not provide financial statements or other financial disclosures to Noteholders.

40. Contrary to the representations to Noteholders, the Noteholder funds were actually used in a massive Ponzi scheme.

41. In the SEC Case, Wallenbrock and Osaki admitted in their own accounting that Wallenbrock collected at least $230 million from Noteholders in the Ponzi scheme.

42. According to an accounting Wallenbrock and Osaki submitted to the Court in the SEC Case, Wallenbrock used approximately $100 million of Noteholders' funds to repay other Noteholders.

43. Wallenbrock's use of Noteholders' funds to repay other Noteholders is also corroborated at Wallenbrock's bank records and Osaki's journal entries.

44. Wallenbrock, Osaki and Ichinotsubo misappropriated approximately $130 million of Noteholder funds for investments and loans through Citadel to high-risk, start-up businesses many of which subsequently filed bankruptcy or closed down.

45. Wallenbrock used the remaining Noteholders' funds to pay for Citadel's overhead, payroll and personal expenses of Osaki and others.

46. Wallenbrock and Citadel only had approximately $3 million remaining in their bank accounts at the time of the Receiver's appointment.

47. Osaki did not tell Noteholders that he filed for bankruptcy in 1991.

48. Osaki did not tell Noteholders that he had been convicted of felony grand theft.

49. Osaki did not tell Noteholders that Noteholders' money was being deposited into an account he shared with his wife, Mary Osaki, and J.T. Wallenbrock.

//
//
//
//

## FIRST CLAIM FOR RELIEF

### (For Avoidance of and Recovery of Fraudulent Transfers Pursuant to California Civil Code Section 3439.04(a) Against Robert Kowell)

50. The Receiver reavers and incorporates by this reference paragraphs 1 through 49, above, as though set forth herein in full.

51. Defendant, Kowell invested in the Wallenbrock investment note program.

52. Defendant, Kowell invested $22,858.92 (hereinafter "Principal Investment") in Wallenbrock notes.

53. Defendant, Kowell received payments from Wallenbrock on his investment totaling $73,290.70.

54. As a result of the payments made by Wallenbrock, Kowell received $50,431.78 more than his Principal Investment.

55. The payments made to Kowell by Wallenbrock were made with the actual intent to hinder, delay or defraud Wallenbrock's Noteholders.

56. The Noteholders are creditors of Wallenbrock.

57. Wallenbrock presently has one or more creditors whose claim arose either before or after Wallenbrock made payments to Kowell on his Wallenbrock notes in excess of Kowell's Principal Investment.

58. The payments made to Kowell over Kowell's Principal Investment are avoidable by the Receiver under applicable law, including California Civil Code Section 3939.04(a).

59. The Receiver is entitled to damages from Kowell in a sum of not less than $50,431.78 with interest as provided by law from the date of each payment exceeding Kowell's Principal Investment.

## SECOND CLAIM FOR RELIEF

### (For Avoidance of and Recovery of Fraudulent Transfers Pursuant to California Civil Code Sections 3439.04(b) And 3439.05 Against Robert Kowell)

60. The Receiver reavers and incorporates by this reference paragraphs 1 through 49 and 51 through 54 above, as though set forth here in full.

61. The payments made to Kowell in excess of Kowell's Principal Investment were made without Kowell giving a reasonably equivalent value to Wallenbrock in exchange for the payments.

62. At the time the payments were made to Kowell in excess of Kowell's Principal Investment, Wallenbrock was engaged in or was about to engage in a business or transaction for which Wallenbrock's remaining assets were unreasonably small in relation to the business or transaction.

63. At the time the payments were made to Kowell in excess of Kowell's Principal Investment Wallenbrock was insolvent.

64. At the time the payments were made to Kowell in excess of Kowell's Principal Investment Wallenbrock believed or reasonably should have believed it would incur debts beyond its ability to pay them as they became due.

65. Wallenbrock presently has one or more creditors whose claims existed prior to the payments to Kowell in excess of Kowell's Principal Investment.

66. Wallenbrock presently has one or more creditors whose claims arose after the payment to Kowell in excess of Kowell's Principal Investment.

67. The payments to Kowell in excess of Kowell's Principal Investment are avoidable by the Receiver under applicable laws, including California Civil Code Sections 3439.04(b) and 3439.05.

68. The Receiver is entitled to damages from Kowell in a sum of not less than $50,431.78, with interest as provided by law from the date of each payment in excess of Kowell's Principal Investment.

## PRAYER

WHEREFORE, the Receiver prays as follows:

1. For judgment against Kowell for $50,431.78.
2. For interest at the legal rate on the amount of the fraudulent transfers from the date of the transfers.
3. For costs.
4. For such other and further relief as the Court deems appropriate.

DATED: November 29, 2004

REIN EVANS & SESTANOVICH LLP

By: /s/ Peter A. Davidson
PETER A. DAVIDSON
Attorneys for James H. Donell, Receiver

//
//
//
//